UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STATE OF LOUISIANA, *EX REL.* | * | CIVIL ACTION NO. 2:19-cv-1182 |
| GRACE RANCH, LLC | * | |
| | * | |
| VERSUS | * | |
| | * | JUDGE JAMES D. CAIN, JR. |
| BP AMERICA PRODUCTION | * | |
| COMPANY and BHP BILLITON | * | |
| PETROLEUM (AMERICAS), INC. | * | MAGISTRATE KATHLEEN KAY |

---

### MEMORANDUM IN SUPPORT OF MOTION FOR REMAND

---

**MAY IT PLEASE THE COURT:**

### I.    BACKGROUND

Grace Ranch, LLC ("Grace Ranch") owns property in Jeff Davis Parish that has been subject to oil and gas mineral leases and exploration and production activities by defendants BP America Production Company ("BP") and BHP Billiton Petroleum (Americas), Inc. ("BHP"). Grace Ranch sued BP and BHP in state district court pursuant to La. R.S. 30:29, sometimes referred to as Act 312, for remediation of the property and other damages.   BP and BHP succeeded in getting the Act 312 state district court lawsuit dismissed on the basis of the subsequent purchaser doctrine.   What has been left behind is heavily contaminated soil and groundwater (not "alleged" contamination as defendants suggest, and which they know is incorrect) that is migrating both within the property and beyond it to neighboring properties.

As defendants noted, Grace Ranch exhausted all appeals of the Act 312 lawsuit.   Left with no other choice, Grace Ranch asked the State of Louisiana, specifically the Commissioner of the

1

Office of Conservation in the Department of Natural Resources, to bring a suit pursuant to La. R.S. 30:14 to make defendants clean up the contamination they left behind. The Commissioner has not done so. Accordingly, as allowed by La. R.S. 30:16, Grace Ranch stepped into the shoes of the State of Louisiana, through the Office of Conservation, and filed the instant lawsuit on July 24, 2019 in state district court against BP and BHP for remediation of the subject property and for costs and attorney fees as allowed under La. R.S. 30:16.

On September 9, 2019, BHP removed the case to this Court. BP consented to the removal. Because this Court lacks jurisdiction over this matter, Grace Ranch respectfully moves for remand.

## II.    SUMMARY OF ARGUMENT

There is no diversity jurisdiction because the State of Louisiana is the real party in interest in this action. When a "person in interest" alleges claims under La. R.S. 30:16, he is alleging, *on behalf of the Commissioner*, a cause of action *granted to the Commissioner* under La. R.S. 30:14. Such a cause of action is a public claim, *not* a claim under private law. Private landowners such as the plaintiff in this case *never* own the Commissioner's cause of action under La. R.S. 30:14. It is too obvious to warrant a prolonged discussion that had the Louisiana Commissioner of Conservation brought this suit, this matter could not have been successfully removed to this Court. There should be no different outcome when a "person in interest" alleges the Commissioner's claims under La. R.S. 30:16.

Alternatively, if the Court finds that there is diversity jurisdiction despite the State of Louisiana being the real party in interest, the Court should nonetheless abstain from exercising jurisdiction over this matter under the *Burford* doctrine.

## III.    THERE IS NO DIVERSITY BECAUSE THE STATE OF LOUISIANA IS THE REAL PARTY IN INTEREST

2

"A state is not a citizen, and a suit in which she is a party to the controversy is not removable on the ground of diverse citizenship."[1] "In determining diversity jurisdiction, the citizenship of the real parties in interest is determinative, and the citizenship of nominal or formal parties who have no real interest in the dispute before the court may be disregarded, even though they may be required by law or court order to join in the lawsuit."[2] **A "state is a real party in interest in cases where the state** may or may not be a named party, but **has some type of** financial or **regulatory interest in the lawsuit**, _**even though the action is actually being prosecuted by a different person or entity.**_"[3]  If a state statute delegates authority to a another party to enforce a state claim, the state is the real party in interest regardless of whether the state statute explicitly authorizes suit "in the name of" or "as an agent of" or "on behalf of" the state.  Louisiana's status as a real party in

---

[1]*Robertson v. Jordan River Lumber Co.,* 269 F. 606, 607 (5th Cir. 1921), citing *Stone v. South Carolina*, 117 U.S. 430, 6 Sup.Ct. 799, 29 L.Ed. 962.

[2]*Wolff v. Wolff,* 768 F.2d 642, 645 (5th Cir.1985), quoted in *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366 (5th Cir. 2006); *Robertson, supra* at 607 (5th Cir.1921); *Harvey v. Blockbuster, Inc.,* 384 F. Supp. 2d 749, 755 (D.N.J. 2005); *Burch v. Snider*, 461 F.Supp. 598, 602 (D.C.Md., 1978); *State of Ala. ex rel. Galanos,* 616 F.Supp. 429, 431 (D.C.Ala. 1985): *Eure,* 481 F.Supp. 639 (E.D.N.C.1979); *Nuclear Eng'g Co.,* 660 F.2d 241 (7th Cir.1981); *State of New York,* 547 F.Supp. 703 (S.D.N.Y.1982); *Com. ex rel. Stumbo,* 2007 WL 2900461; *State v. Reno Traction Co.,* 41 Nev. 405, 171 P. 375 (1918)(*quo warranto* by State on the relation of City of Reno held not removable).

[3]*New Mexico ex rel. Nat'l Educ. Ass'n of New Mexico, Inc. v. Austin Capital Mgmt. Ltd.*, 671 F.Supp.2d 1248, 1251 (D.N.M.2009)(state *qui tam* action filed by domestic non-profit corporation under New Mexico Fraud Against Taxpayer's Act) (emphasis added), citing *Bosse v. Pitts*, 455 F.Supp.2d 868 (W.D.Wis.2006) (state's crime-victim-compensation program was real party in interest in plaintiff's civil lawsuit, because program had subrogation interest in plaintiff's potential recovery, to extent program had paid moneys to victim); *West Virginia ex rel. McGraw,* 354 F.Supp.2d at 665 (state was real party in interest, because state potentially stood to recover hundreds of millions of dollars it had paid out for workers' medical care); *State of Colorado ex rel. Land Acquisition Comm'n v. American Mach. & Foundry Co.*, 143 F.Supp. 703 (D.Colo.1956) (state was real party in interest to condemnation action brought by Commission, acting as agent of the state).

interest must be determined from "the essential nature of the proceeding."[4] "The state is the real

party in interest when an action concerns a type of 'injury' that the state either has addressed or

would likely attempt to address through its laws to further the 'well-being of its populace.'"[5]

The Louisiana commissioner of conservation ("commissioner") has jurisdiction over oil

and gas exploration and production activities.[6]

The Louisiana Constitution establishes environmental preservation as the public policy of

the state. La. Const. Art. IX, § 1 provides, in pertinent part, that:

> The natural resources of the [S]tate, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.

Pursuant to the constitutional mandate of Article IX, § 1, the desire to protect the health and safety

of the State's citizens, the growth of the State's industrial activity, and the need to coordinate

environmental control regulations with the federal program have prompted the legislature to act in

a number of significant ways in the field of environmental regulation at the state level.[7] The

legislature has created an extensive body of law that addresses every phase of the oil and gas

exploration and production processes, from the initial exploration and drilling phases to cleanup

---

[4]*Harvey v. Blockbuster, Inc.*, *supra* at 755, quoting *Nuclear Eng'g Co. v. Scott,* 660 F.2d 241, 250.

[5]*Harvey v. Blockbuster, supra* at 755, quoted with approval by this Court in *In re Vioxx Products Liab. Litig.*, 843 F. Supp. 2d 654, 665-66 (E.D. La. 2012) and by the Fifth Circuit in *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008).

[6]La. R.S. 30:4.

[7] *See Vanguard Environmental, LLC v. Terrebonne Parish Consol. Gov't*, 2012–1998, p. 4 (La. App. 1 Cir. 6/11/13), (an unpublished opinion) (relying on *Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury*, 371 So.2d 1127, 1133 (La.1979)).

and disposal of waste, and the state agency responsible for those responsibilities is the Office of

Conservation, which is directed and controlled by the Commissioner of Conservation.[8]

In furtherance of those goals, La. R.S. 36:358(C) provides, in pertinent part, that:

The office of conservation, in accordance with law, ***shall exercise the functions of the state with respect to the regulation, conservation, and use of the natural resources of the state*** which are not specifically within the jurisdiction of other state departments or agencies.[9]

Furthermore, La. R.S. 30:1, *et seq*., created the Department of Conservation, and provides in La.

R.S. 30:1(D) as follows:

The disposal of any waste product into the subsurface by means of a disposal well and the regulation of all surface and storage waste facilities incidental to oil and gas exploration and production ***shall*** be within the jurisdiction of the department.[10]

It is beyond dispute that the Office of Conservation is a statutorily created arm of the State of

Louisiana and statutorily exercises the functions of the State with respect to surface and storage

waste facilities incidental to oil and gas exploration and production activities.

In *Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury*,[11] our

Supreme Court spoke to the pervasiveness of the general law of the state governing the disposal

of waste products into the subsurface stating that:

---

[8] La. R.S. 30:1–101.10; *Vanguard Environmental, LLC*, 2012–1998 at p. 4. *St. Tammany Par. Gov't v. Welsh*, 2015-1152 (La. App. 1 Cir. 3/9/16), 199 So. 3d 3, 7, *writ denied*, 2016-0657 (La. 6/17/16), 194 So. 3d 1108, *reconsideration not considered*, 2016-0657 (La. 6/28/16), 195 So. 3d 1204, *and writ denied*, 2016-0650 (La. 6/17/16), 194 So. 3d 1109, *reconsideration not considered*, 2016-0650 (La. 6/28/16), 195 So. 3d 1204.

[9] La. R.S. 36:358 (emphasis added).

[10] La. R.S. 30:1(D) (emphasis added).

[11] *Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury*, 371 So.2d 1127, 1133 (La.1979).

By Act 157 of 1940 the Commissioner of Conservation was authorized to 'prevent the pollution of fresh water supplies by oil, gas, or salt water . . .' Under this authority, as the successor agency, the Department of Conservation has been charged with protecting Louisiana fresh water aquifers from pollution for almost forty years [almost seventy-eight years to date].[12]

Unquestionably, the oil and gas industry is currently regulated in Louisiana by the Conservation Act, La. R.S. 30:1, *et seq*. The conservation laws are administered by the Commissioner of Conservation, who has jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of the Conservation Act and all other laws relating to the conservation of oil or gas. Among the many powers vested in the Commissioner of Conservation is the "authority to make . . . any reasonable rules, regulations, and orders that are necessary from time to time in the proper administration and enforcement of the Conservation Act."[13]

La. R.S. 30:29 provides, in pertinent part, that:

> The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates ***that the natural resources and the environment of the state, including ground water, are to be protected***, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy. ***It is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest.*** To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, office of conservation.[14]

---

[12] *Desormeaux Enterprises, Inc. v. Village. of Mermentau*, 568 So.2d 213, 215 (La. Ct. App. 1990).

[13] La. R.S. 30:4C.

[14] La. R.S. 30:29, *et seq*. (emphasis added); *Duplantier Family P'ship v. BP Amoco*, 2007-0293 (La. App. 4 Cir. 5/16/07).

6

The Commissioner's power to regulate the state's oil and gas resources is an exercise of constitutionally protected police powers, which may not be abridged.[15]

The "violations" referenced in La. R.S. 30:16 includes exceedances of the standards set forth in Louisiana Statewide Order No. 29-B. These standards involve strict limits on the amount of contaminants (chlorides, heavy metals, oil and grease, etc.) in soil and groundwater environments underlying oil and gas operations; strict controls to govern the storage, treatment and disposal of oilfield waste, including produced water; drilling muds and cuttings; drilling, work over, and completion fluids; sludges from production tanks and pits; and other designated oilfield waste generated from the drilling and production of oil and gas wells.   Standards are also established to govern the construction, operation, monitoring, and closure of unlined earthen pits used to store contaminated water and other oilfield waste.   Regulatory standards also govern the abandonment of old tanks, treaters, pipelines, and wells, and generally prohibit oilfield operators from leaving derelict debris or wells onsite.   Based upon the soil and groundwater sampling and testing to date, the defendant operators are in violation of a majority of these regulatory standards.

## IV.    THE CLAIMS ALLEGED IN THE PETITION ARE LIMITED TO CLAIMS UNDER LA. R.S. 30:16

La. R.S. 30:14 authorizes the commissioner to seek injunctive relief for violations of state laws relating to "the conservation of oil or gas, or both." The causes of action alleged in the present

---

[15] *See* La. Const. Art. VI, § 9; *Amoco Production Co. v. Thompson*, 516 So.2d 376, 384 (La. App. 1 Cir.1987), *writs denied*, 520 So.2d 118 (La.1988)*; St. Tammany Parish Government v. Welsh*, 2015-1152 (La. App. 1 Cir. 3/9/16), 199 So. 3d 3, 8, *writ denied*, 2016-0657 (La. 6/17/16), 194 So. 3d 1108, *reconsideration not considered*, 2016-0657 (La. 6/28/16), 195 So. 3d 1204, *and writ denied*, 2016-0650 (La. 6/17/16), 194 So. 3d 1109, *reconsideration not considered*, 2016-0650 (La. 6/28/16), 195 So. 3d 1204; *Louisiana Envtl. Action Network v. Welsh*, 2016-0906 (La. App. 1 Cir. 6/14/17), 224 So. 3d 383, 386–87, *reh'g denied* (July 19, 2017).

case are limited to claims under La. R.S. 30:16.   La. R.S. 30:16 allows "any person in interest" to

seek injunctive relief on behalf of the commissioner when the commissioner fails to take

appropriate action under La. R.S. 30:14 after demand is made upon him to do so.   La. R.S. 30:16

provides:

> If the commissioner fails to bring suit within ten days to restrain a violation as
> provided in R.S. 30:14, any person in interest adversely affected by the violation
> who has notified the commissioner in writing of the violation or threat thereof and
> has requested the commissioner to sue, may bring suit to prevent any or further
> violations, in the district court of any parish in which the commissioner could have
> brought suit. If the court holds that injunctive relief should be granted, the
> commissioner shall be made a party and shall be substituted for the person who
> brought the suit and the injunction shall be issued as if the commissioner had at all
> times been the complaining party.[16]

The three requirements of a cause of action under La. R.S. 30:16 are: (1) a defendant must be

"violating or is threatening to violate a law of this state with respect to the conservation of oil or

gas, or both, or a provision of this Chapter, or a rule, regulation, or order made thereunder"[17]; (2)

a "person in interest" such as a current landowner must notify the commissioner in writing of a

violation and request that the commissioner file suit to prevent any or further violations; and, (3)

the commissioner must fail to bring suit within ten days.   All three requirements are satisfied here.

The real party in interest in actions under La. R.S. 30:16 is the State of Louisiana.   Any

favorable judgment must be rendered in the name of the commissioner, not the plaintiff, as La.

R.S. 30:16 states in pertinent part: "If the court holds that injunctive relief should be granted, the

commissioner shall be made a party and shall be substituted for the person who brought the suit

---

[16]La. R.S. 30:16.

[17]La. R.S. 30:14.

and *the injunction shall be issued as if the commissioner had at all times been the complaining party*." (emphasis added).   La. R.S. 30:16 requires a failure by the commissioner to file a suit on his own behalf under La. R.S. 30:14.   La. R.S. 30:14 provides that "the commissioner shall bring suit to restrain that person from continuing the violation [of laws or regulations relating to the conservation of oil and gas] or from carrying out the threat [of such violations]."   When a "person in interest" files a suit under La. R.S. 30:16, he is alleging, on behalf of the commissioner, a cause of action granted to the commissioner under La. R.S. 30:14.   Such a cause of action is a public claim, not a claim under private law. A private landowner such as Grace Ranch never owns the commissioner's cause of action.   If any relief is granted under the statute, the plaintiff is retroactively deemed to be a non-party to the proceeding.

If the plaintiff prevails in this matter, the statute actually ***prohibits*** the plaintiff, Grace Ranch, LLC, from obtaining a judgment in its name. ***The only party allowed to obtain a judgment under the provisions of La. R.S. 30:16 is the Louisiana Commissioner of Conservation***, who is statutorily authorized to "***exercise the functions of the state with respect to the regulation, conservation, and use of the natural resources of the state*** . . .,"[18] and who ***must*** be substituted as the plaintiff in the event that the plaintiff proves liability and in whose name injunctive relief ***must be granted*** in the final judgment.   ***This Court does not have jurisdiction to issue such a judgment***.

## V.   The Prior Private Law Legacy Litigation

---

[18] La. R.S. 36:358 (emphasis added).

9

Grace Ranch previously filed a typical "legacy lawsuit" under Louisiana private law that was dismissed on grounds of the "subsequent purchaser rule"[19] because the state district court determined that Grace Ranch had not and could not have validly obtained the required assignments to sue from its ancestors in title who owned the property when the damage was inflicted by the defendants.[20]   Even though the Louisiana Supreme Court in its most recent subsequent purchaser decision in *Eagle Pipe* cautioned that its ruling did not apply to oil and gas cases involving mineral leases or the mineral code,[21] the U.S. Fifth Circuit adopted the reasoning of Louisiana intermediate appellate courts that have ruled that *Eagle Pipe* applies to such cases, while ignoring decisions issued by the same and other appellate courts that have ruled that *Eagle Pipe* does not apply.[22]

Following the suggestions of Justice Victory in *Marin v. Exxon*,[23] Grace Ranch has filed the present action.   Referring to the types of state regulatory violations that are at issue in the present suit, Justice Victory in *Marin* noted that "regardless of who has standing to pursue claims for money damages, the current owner of property ***always*** has the right to seek a regulatory cleanup

---

[19]"The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence *257 of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267 (La. 10/25/11, 8), 79 So.3d 246, 256–57.

[20]*See Guilbeau v. Hess Corp*, 854 F. 3d 310.

[21]79 So. 3d 246, at footnote 80.

[22]*See, e.g., Duck v. Hunt Oil Co.*, 2013-628 (La.App. 3 Cir. 3/5/14, 6), 134 So.3d 114, 119, writ denied, 2014-0703 (La. 6/13/14), 140 So.3d 1189-1190: "By its own terms, *Eagle Pipe* does not apply to situations involving mineral leases. Thus, the trial court erred in applying the subsequent purchaser theory recognized in *Eagle Pipe* to bar the claims that Duck asserts in this matter as those claims arise under mineral leases."

[23]*Marin v. Exxon Mobil Corp.,* 48 So.3d 234 (La. 2010).

of a contaminated site. La. R.S. 30:6(F); La. R.S. 30:16."[24] Later in *Eagle Pipe & Supply Inc. v. Amerada Hess Corp.*, the Louisiana Supreme Court discussed the legislative choices reflected in prescription laws that may bar a landowner's private claims for money damages for legacy pollution that burdens his property:

> We are not unaware of the effects which the rules of discovery and prescription will have on certain fact situations under this analysis, especially where the damage to property occurred in the distant past, where property rapidly changes hands, or where ancestors in title are non-existent. We find the rules of discovery and prescription are deliberate legislative choices which ultimately limit otherwise imprescriptible torts and which maintain certainty in transactions involving immovable property. The legislature, if it chose, could have created a right of action to seek damages against tortfeasors for damage to property which affects current property owners no matter when the damage occurred, or could have made an exception to prescription rules for long-term contamination of property. But such legislation has not been enacted. ***Instead, the legislature has decided the only addition to current legal remedies is a mechanism for remediating the property.***[25]

One of the "current legal remedies" for such past pollution identified by the Louisiana Supreme Court in footnote 71 of *Eagle Pipe* is "La. R.S. 30:16 (suit by interested party upon commissioner of conservation's failure to sue)."   Thus, under the Louisiana Supreme Court's rulings in *Marin* and *Eagle Pipe*, Grace Ranch clearly has a right to pursue the regulatory claims of the commissioner that are alleged here.

## VI.    THIS HONORABLE COURT SHOULD ALTERNATIVELY DECLINE TO EXERCISE JURISDICTION OVER THIS MATTER UNDER THE *BURFORD* DOCTRINE

The State of Louisiana is the real party in interest here.   However, in the event the Court finds otherwise, the Court should nonetheless decline to exercise jurisdiction over this matter pursuant to the *Burford* doctrine.

---

[24]*Marin v. Exxon Mobil Corp.,* 48 So.3d 234, 256 (La. 2010)(emphasis added).

[25]*Id.* at 276.

A federal district court may, in its sound discretion, abstain from exercising jurisdiction where doing so would "be prejudicial to the public interest."[26] *Burford* abstention is appropriate "where the issues 'so clearly involve basic problems of [State] policy' that the federal courts should avoid entanglement."[27] The U.S. Supreme Court explained when abstention under *Burford* is proper:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.[28]

The Fifth Circuit considers the following factors in determining whether to exercise the *Burford* abstention: "(1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law, or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in the area; and (5) the presence of a special state forum for judicial review."[29]

Consideration of the *Burford* factors calls for the Court's exercise of *Burford* abstention in this case.   First, this action unquestionably arises under state law, specifically La. R.S. 30:16 and La. R.S. 30:14.   Second, resolution of this case will involve a determination of whether 30:16 claims can be applied to past activity as opposed to ongoing activity, which is an area of unsettled

---

[26] *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).

[27] *Aransas Project v. Shaw*, 775 F.3d 641, 649 (5th Cir. 2014) (citing *Burford*, 319 U.S. at 332).

[28] *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).

[29] *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 623 (5th Cir. 2017).

Louisiana law and involves local facts.   Third, the State's interest in deciding how, when, and to what extent to hold oil and gas companies responsible for remediating property in the State of Louisiana cannot be overstated.   Finally, the need for uniform and coherent state law and policy on this issue is obvious.   A ruling by this Court could conflict with rulings from other courts, thereby creating an uncertain, and thus inequitable, system for determining who bears responsibility for contaminated land until the Louisiana Supreme Court ultimately rules on the matter.

Very recently, on August 12, 2019, Judge Dee Drell issued a memorandum ruling in a 30:16 case postured identically to this one.[30]  In *Guilbeau*, the landowner filed suit pursuant to 30:16 in state district court in place of the Commissioner of Conservation, just like Grace Ranch has done here.   Judge Drell analyzed the *Burford* abstention factors and found that "the Burford factors weigh in favor of abstention."[31]  This Honorable Court should reach the same conclusion.

## VII.    CONCLUSION

The jurisdictional dispute in this case turns on whether La. R.S. 30:16 authorizes a landowner to assert claims **belonging to the State**, and the answer to that question is a resounding yes.   If the plaintiff prevails, the commissioner must be made a party to this action and the injunctive relief must be granted in his favor in the final judgment.   However, this Court does not have jurisdiction to issue such a judgment.

Alternatively, this Honorable Court should exercise its sound discretion to abstain from jurisdiction over this matter pursuant to the *Burford* doctrine because this case involves

---

[30] *Kenneth James Guilbeau v. BEPCO, L.P., et al*, 2019 WL 3801647, No. 1:18-cv-551 (W.D. La. 8-12-19).
[31] *Guilbeau*, 2019 WL 3801647, at p. 8.

13

interpretation and application of unsettled Louisiana law that is vital to the welfare of the environment and landowner rights in the State of Louisiana.

This Honorable Court should remand this matter back to the 31st Judicial District Court, Parish of Jefferson Davis, State of Louisiana.

By attorneys:

/s/ David P. Bruchhaus
Chad E. Mudd #25188
David P. Bruchhaus #24326
M. Keith Prudhomme #14336
Matthew P. Keating #30911
MUDD BRUCHHAUS & KEATING, L.L.C.
410 E. College St.
Lake Charles, LA 70605
Tele: (337) 562-2327
Fax: (337) 562-2391

*and*

Donald T. Carmouche, Bar #2226
Victor L. Marcello, Bar # 9252
John H. Carmouche, Bar #22294
William R. Coenen, III, Bar #27410
Brian T. Carmouche, Bar #30430
Todd J. Wimberley, Bar #34862
Ross J. Donnes, Bar #33098
D. Adele Owen, Bar #21001
TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA 70810
Telephone: (225) 400-9991
Fax: (225) 448-2568

**ATTORNEYS FOR PETITIONER**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of October, 2019, I electronically filed the

14

forgoing with the Clerk of Court by using the CM/ECF system and that, by operation of the

CM/ECF system, all counsel of record have been served with a copy of this filling.


/s/ David P. Bruchhaus