**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **STATE OF LOUISIANA, *EX REL.*** | ∗ | **CASE NO. 2:19-CV-01182** |
| **GRACE RANCH, LLC** | ∗ | |
| | ∗ | |
| **VERSUS** | ∗ | **JUDGE JAMES D. CAIN, JR.** |
| | ∗ | |
| **BP AMERICA PRODUCTION** | ∗ | |
| **COMPANY and BHP PETROLEUM** | ∗ | **MAGISTRATE JUDGE KAY** |
| **(AMERICAS), INC.** | ∗ | |
| | ∗ | |

---

**DEFENDANTS'[1] MEMORANDUM IN OPPOSITION TO MOTION FOR REMAND**

---

[1] Defendants are BP America Production Company and BHP Petroleum (Americas), Inc.

## TABLE OF CONTENTS

I.      **FACTUAL AND PROCEDURAL BACKGROUND**...................................................2

II.     **LAW AND ARGUMENT**.........................................................................................4

    A.  Grace Ranch cannot evade diversity jurisdiction by purporting to bring this
        action in the name of the State of Louisiana without any authority to do so. ............5

    B.  The State's alleged presence in this suit does not defeat diversity jurisdiction
        because the State is a nominal party. ...........................................................................6

    C.  The fact that the Commissioner may be substituted as plaintiff if injunctive
        relief is granted is irrelevant to the Court's jurisdictional analysis. ........................10

    D.  Abstention is not warranted when this Court can decide these state law
        issues without disrupting the State's regulatory policy. ...........................................12

III.    **CONCLUSION** .....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Bosse v. Pitts*, 455 F. Supp. 2d 868, 873 (W.D. Wis. 2006) .............................................................8

*Brownell Land Co., LLC v. Apache Corp.*, No. Civ. A 05-322, 2005 WL 3543772
    (E.D. La. Oct. 13, 2005)....................................................................................................15, 16

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)................................................................... 1, 12-16

Charles L. Gowen & William H. Izlar, Federal Court Abstention
    in Diversity of Citizenship Litigation, 43 Tex. L. Rev. 194 (1964) .................................2

*Colorado ex rel. Land Acquisition Comm'n v. Am. Mach. & Foundry Co.*,
    143 F.Supp. 703, 710 (D. Co. 1956) ................................................................................8

*Colo. River Conservation Dist. v. United States*, 424 U.S. 800 (1976).......................................12

*D.C. ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041,
    1047 (D.C. Cir. 1986) .......................................................................................................9

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267 (La. 10/25/11),
    79 So.3d 246 ......................................................................................................................9

*Emerald Land Corp., v. Chevron U.S.A. Holdings, Inc.*, 2019 WL 2353189
    (W.D. La. 2019) ...........................................................................................................2, 15

*Farrell Const. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990).................................7

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) .................................11

*Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) .....................................4

*Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)........................................11

*Grace Ranch, LLC v. BP Am. Prod. Co.*, 2017-1144 (La. App. 3 Cir. 7/18/18),
    252 So.3d 546 ....................................................................................................................3

*Grace Ranch, LLC v. BP Am. Prod. Co.*, 2018-1655 (La. 2/18/19), 264 So.3d 450....................3

*Guilbeau v. BEPCO, L.P.*, No. 18-551, 2019 WL 3801647 (W.D. La. Aug. 12, 2019) ......15, 16

*Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 754 (D.N.J. 2005) ...........................................8

*Jefferson Cmty. Health Care Ctrs, Inc. v. Jefferson Parish Gov't*,
    849 F.3d 615 (5th Cir. 2017) .............................................................................................1

*La. Riverboat Gaming Comm'n*, 94-0996 (La. App. 1 Cir. 1/27/95), 659 So. 2d 775, 783 ......5,6

*Louisiana ex rel. Guilbeau v. BEPCO, L.P.*, No. 18-551, 2018 WL 4869389, *1 (W.D. La. June 18, 2018) ....................................................................................16

*Louisiana v. Union Oil Co. of Cal.*, 458 F.3d 364, 366 (5th Cir. 2006)............................................6

*Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So.3d 234 ....................................9

*Maryland v. Baldwin*, 112 U.S. 490, 492 (1884)..........................................................................9

*McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, Cahokia*, 373 U.S. 668 (1963) .......1, 14

*Meredith v. Winter Haven*, 320 U.S. 228 (1943).................................................................2, 14

*Mills v. Davis Oil Co.*, 11 F.3d 1298, 1305 (5th Cir. 1994)  ....................................................6, 7

*Missouri v. Homesteaders Life Ass'n*, 90 F.2d 543, 549 (8th Cir. 1937)...........................................6

*Mo., Kan. & Tex. Ry. Co. v. Hickman* (*Missouri Railway*), 183 U.S. 53, 60 (1901)................7, 8

*Moore v. Denbury Onshore, LLC*, 2016 WL 843384 (W.D. La. 2016) ................................2, 15

*Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009) ...............................13

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ................................................................7

*New Mexico ex rel. Nat'l Educ. Ass'n of N.M., Inc. v. Austin Capital Mgmt. Ltd.*, 671 F. Supp. 2d 1248, 1251 (D.N.M. 2009)..................................................................................8

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989)..1, 13, 14

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) ....................................1, 13, 14, 15

*Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) ..................................................13

*Thames v. Mississippi ex rel. Shoemaker* 117 F.2d 949, 950 (5th Cir. 1941).........................10, 11

*Transamerica Ins. Co.*, 797 F.2d at 1047 ..................................................................................9

*United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 935 (2009).........................5

*Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 701 (5th Cir. 1999)......................................13

*West Virginia ex rel. McGraw v. Minn. Mining & Mfg. Co.*, 354 F. Supp. 2d 660, 665 (S.D.W. Va. 2005)..................................................................................................................8

*Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) ...............................13

*Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985) ..........................................................................7, 10

## **Rules**

Black's Law Dictionary (10th ed. 2014)........................................................................................5

La. R.S. 30:14 ...........................................................................................................................6, 7

La. R.S. 30:16 ..................................................................................................................1, 3, 6, 7, 14

28 U.S.C. § 1332...............................................................................................................1, 2, 4

State. La. Const. art. IV, § 8...........................................................................................................5

**INTRODUCTION**

Plaintiff Grace Ranch, LLC ("Grace Ranch") cannot evade this Court's diversity subject-matter jurisdiction by purporting to bring this action in the name of the State of Louisiana without any authority to do so, under a statute – La. R.S. 30:16 – that does not even apply.  The State has no pecuniary interest in this lawsuit, is not involved in its prosecution, and is not the party holding the substantive right sought to be enforced.  In truth, this is a suit by a landowner—Grace Ranch—seeking remediation of its private property.  The real party in interest is Grace Ranch; the State is, at most, a nominal party whose presence must be disregarded in determining whether there is complete diversity.  Because the real dispute is between citizens of different states, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

In addition, Grace Ranch's suggestion that this Court should abstain from exercising jurisdiction pursuant to the *Burford* doctrine and remand this case back to state court is not supported by the law.  Grace Ranch fails to explain with any particularity how its sole statutory cause of action under La. R.S. 30:16 either 1) presents "difficult questions of state law," 2) implicates a "complex regulatory scheme of paramount local concern and a matter which demands local administrative expertise" or 3) disrupts the coordinated administration by a state regulatory agency, all of which are necessary inquiries this Court must make before the *Burford* abstention doctrine can be invoked.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989); *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, Cahokia*, 373 U.S. 668 (1963).  La. R.S. 30:16 is a part of a regulatory scheme to address violations with respect to the conservation of oil and gas that this Court can interpret without disrupting Louisiana's entire system of environmental regulations.  *See Jefferson Cmty. Health Care Ctrs, Inc. v. Jefferson Parish Gov't*, 849 F.3d 615 (5th Cir. 2017).

Further, Grace Ranch's allegations do not present "difficult questions of state law."  The central issue raised in the Petition boils down to whether Grace Ranch can sue Defendants for alleged past, regulatory violations regarding contamination arising from their historical operations. Similar issues have been repeatedly decided and adjudicated by federal courts in Louisiana and within this district.  *See generally Emerald Land Corp., v. Chevron U.S.A. Holdings, Inc.*, 2019 WL 2353189 (W.D. La. 2019) ("Emerald contends it is entitled to restoration and remediation of its property . . . from all Defendants"); *Moore v. Denbury Onshore, LLC*, 2016 WL 843384 (W.D. La. 2016) ("Essentially, the Moores allege that Denbury contaminated their property through oil and gas operations.")  There is simply no justification for this Court to yield jurisdiction to a state court of a claim that is properly before it under 28 U.S.C. § 1332.  To abstain from deciding this case would frustrate the very rationale behind diversity jurisdiction:  the importance of providing a neutral federal forum when litigants are from different states.[2]  For the following reasons, Grace Ranch's Motion for Remand should be denied and this case be allowed to proceed in this Court.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

As discussed more fully in prior filings,[3] this is the second lawsuit filed by Grace Ranch based on the same allegations of damage to the same property.  In 2011, this litigation originated as a "legacy" lawsuit in which Grace Ranch asserted tort, contract, and property law claims against Defendants.  Grace Ranch claimed to own seven tracts of land in Jefferson Davis Parish, which were supposedly contaminated by oil and gas operations conducted by various companies, including Defendants.  Grace Ranch sought damages and, as in this case (though not in connection

---

[2] *See Meredith v. Winter Haven*, 320 U.S. 228 (1943); *see also* Charles L. Gowen & William H. Izlar, Federal Court Abstention in Diversity of Citizenship Litigation, 43 Tex. L. Rev. 194 (1964).

[3] For a more detailed recitation of the factual and procedural background, *see* Rec. Doc. 1 (Notice of Removal).

2

to a claim under La. R.S. 30:16), a regulatory cleanup of the land.  On June 14, 2017, all of Grace Ranch's claims against BP and BHP were dismissed with prejudice on summary judgment.[4]

Shortly after dismissal, on August 9, 2017, Grace Ranch sent a letter to the Commissioner of Conservation of the Department of Natural Resources.  [Rec. Doc. 1-1, at 11 (Petition Exhibit B)].  In the letter, Grace Ranch purported to notify the Commissioner of alleged violations of Statewide Order 29-B, which governs, among other things, certain restoration of historical oilfield sites.  Grace Ranch's letter stated that it planned to sue the responsible parties under Louisiana Revised Statutes § 30:16 ("R.S. 30:16"), if the Commissioner failed to file suit to restrain the alleged violations within ten days.  The alleged "violations" were the same historical operations that formed the basis of Grace Ranch's suit that was previously dismissed.

Nearly two years after sending its letter to the Commissioner (and after the judgment dismissing its claims became final), Grace Ranch, claiming to act on behalf of the State of Louisiana, filed this suit in Jefferson Davis Parish.  (Rec. Doc. 1-1, at 3).  In this suit, Grace Ranch asserts a sole statutory claim under R.S. 30:16 for injunctive relief and remediation of the same alleged contamination arising out of the same historical operations at issue in its previously dismissed suit.  The parties (other than the omission of certain defendants), property, claims asserted, and demands for injunctive relief/remediation are the exact same as those made in the 2011 suit.

---

[4] Grace Ranch's suit was dismissed pursuant to Louisiana's subsequent purchaser doctrine, which provides that a purchaser of property has no right to sue for damage that occurred prior to his purchase absent an assignment or subrogation of the prior owner's personal right to sue for such damage.  The Louisiana Court of Appeal for the Third Circuit affirmed the dismissal of Grace Ranch's suit on July 18, 2018.  *See Grace Ranch, LLC v. BP Am. Prod. Co.,* 2017-1144 (La. App. 3 Cir. 7/18/18), 252 So.3d 546.  The Louisiana Supreme Court denied Grace Ranch's writ application on February 18, 2019.  *See Grace Ranch, LLC v. BP Am. Prod. Co.*, 2018-1655 (La. 2/18/19), 264 So.3d 450.  Consequently, the 2017 judgment dismissing Grace Ranch's claims against BP and BHP is final.

On September 9, 2019, BHP timely removed this case based on diversity jurisdiction. (Rec. Doc. No. 1).  BP consented to the removal.  (Rec. Doc. 1-2).  At the time of the filing of this action and since that time, BP and BHP were and are now Delaware corporations with their principal places of business in Texas.  (Rec. Doc. 1, at 5 (Notice of Removal, ¶¶ XIV, XV).   Thus, BP and BHP are citizens of Delaware and Texas for the purposes of this diversity jurisdiction analysis. Further, Grace Ranch is a limited liability company comprised of two members—Staci R. Thibodeaux, a citizen of Louisiana and Chris B. Thibodeaux, a citizen of Louisiana.[5]  (Rec. Doc. 1, at 5 (Notice of Removal, ¶ XIII).  Thus, Grace Ranch is a citizen of Louisiana for the purposes of this diversity jurisdiction analysis.  Grace Ranch does not dispute any of these allegations regarding the parties' citizenship, nor does  it dispute that the amount in controversy exceeds $75,000, exclusive of interest and costs.  (Rec. Doc. 1, at 5 (Notice of Removal, ¶ XVI).  Instead, Grace Ranch erroneously claims that diversity does not exist here because the State is the real party in interest.  However, for the reasons articulated below, the Court should find that it has jurisdiction pursuant to 28 U.S.C. § 1332 to decide the merits of this case and deny Grace Ranch's Motion for Remand.

## II.    LAW AND ARGUMENT

When removal is based on diversity jurisdiction, the removing party bears the burden of establishing that the parties are diverse and that the amount in controversy exceeds $75,000. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).  Here, Grace Ranch does not dispute the amount-in-controversy requirement.  Nor does it dispute that complete diversity exists.  Rather, the sole question is whether the State is a real and substantial party to this lawsuit.

---

[5] Grace Ranch also alleged that it was a Louisiana limited liability company domiciled in Jefferson Davis Parish.  (Rec. Doc. 1-1, at 3 (Petition ¶ 3).

For the reasons discussed below, the State is merely a nominal party, improperly named in the caption, whose purported presence must be disregarded.

**A.  Grace Ranch cannot evade diversity jurisdiction by purporting to bring this action in the name of the State of Louisiana without any authority to do so.**

Grace Ranch erroneously attempts to evade federal jurisdiction by purporting to bring this action in the name of the State. But this is not a suit by the State, regardless of the caption. A person named in the caption is not necessarily a party, and the caption is not determinative as to the identity of the parties to the action. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 935 (2009). Thus, the fact that Grace Ranch included the State in the caption of this matter does not mean that it has authority to institute this action on behalf of, or in the name of, the State.[6]

A state may sue or be sued only with its consent and in the manner provided by statute or constitutional provision. For example, the Louisiana Constitution vests the Louisiana Attorney General with the authority "to institute, prosecute, or intervene" in any civil action to assert or protect a right or interest of the State. La. Const. art. IV, § 8. Generally, when the legislature designates certain persons or officers to institute suits in the name of the State, they alone can maintain such suits. *See In re La. Riverboat Gaming Comm'n*, 94-0996 (La. App. 1 Cir. 1/27/95), 659 So. 2d 775, 783 ("Because the Attorney General is vested. . . with the authority to institute, prosecute, or intervene in any civil action or proceeding, as necessary for the assertion or protection of any right or interest of the state, we find that the District Attorney of East Baton Rouge Parish is without authority to institute this action on behalf of the State of Louisiana.")

---

[6] A suit *ex relatione* "is typically brought by the government upon the application of a private party (called a *relator*) who is interested in the matter." *Ex rel.*, Black's Law Dictionary (10th ed. 2014). The "relator" is defined as "[t]he real party in interest in whose name a state or an attorney general brings a lawsuit." *Relator*, Black's Law Dictionary (10th ed. 2014). Unlike a typical suit brought *ex relatione*, in this case Grace Ranch instituted the action itself, without the involvement of the attorney general or any state agency.

Louisiana law does not allow self-appointed interlopers to institute legal action on behalf of the State without legal authority to do so. After a thorough analysis of the applicable statutory and constitutional provisions, the court in *Louisiana Riverboat Gaming Commission* concluded that a statute granting a district attorney the power to "represent" the State in lawsuits did not authorize the district attorney to institute a civil action on behalf of the State—that power is vested in the Attorney General. *Id.* at 782-83; *see also Missouri v. Homesteaders Life Ass'n*, 90 F.2d 543, 549 (8th Cir. 1937) (concluding that the State of Missouri was not a party whose presence would defeat diversity jurisdiction, although it was named in the caption and had an interest in the recovery, because the plaintiff was not authorized to sue in the name of the State).

Here, R.S. 30:16 "provides that a *private party* such as [Grace Ranch] can bring civil action against a violator." *Mills v. Davis Oil Co.*, 11 F.3d 1298, 1305 (5th Cir. 1994) (emphasis added); *see also* La. Rev. Stat. § 30:16 ("[A]ny person in interest adversely affected by the violation... may bring suit to prevent any or further violations. . . ."). As Grace Ranch seems to acknowledge, R.S. 30:16 does not authorize Grace Ranch to bring claims on behalf of the State, as opposed to on Grace Ranch's own behalf.[7]   Because Grace Ranch has no authority to sue on behalf of, or in the name of, the State, the State is improperly named in the caption and is not a party to this action.

**B.      The State's alleged presence in this suit does not defeat diversity jurisdiction because the State is a nominal party.**

In an action where a state is a proper party, there can be no diversity jurisdiction because a state is not a citizen for purposes of diversity. *Louisiana v. Union Oil Co. of Cal.*, 458 F.3d 364, 366 (5th Cir. 2006). However, if a state is merely a nominal party with no real interest in the dispute then its presence in the action is ignored for jurisdictional purposes. *Id.* "In determining diversity

---

[7] *See* Rec. Doc. 1-1, at 4 (Petition ¶ 5) ("Therefore, petitioner has the right to seek relief set forth in La. R.S. 30:14 and 30:16.").

jurisdiction, the citizenship of the real parties in interest is determinative, and the citizenship of nominal or formal parties who have no real interest in the dispute before the court may be disregarded, even though they may be required by law or court order to join in the lawsuit." *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985). Thus, the court "must disregard nominal or formal parties and rest jurisdiction only upon the real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). The real party in interest is the person holding the substantive right sought to be enforced. *Farrell Const. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990).

The State's alleged presence in this suit does not defeat diversity jurisdiction. First, even if R.S. 30:16 provided the basis for a claim against the Defendants, which is expressly denied, the statute only authorizes "a person in interest adversely affected" by an alleged regulatory violation to file suit to prevent any or further violations if the Commissioner of Conservation fails to bring suit under R.S 30:14. *See* R.S. 30:16; *Mills*, 11 F.3d at 1305 (noting that R.S. 30:16 permits "a private party" to bring a civil action against a violator). As Grace Ranch admits, the "person in interest adversely affected" for purposes of R.S. 30:16 is Grace Ranch.[8] Therefore, the person holding the substantive right sought to be enforced is Grace Ranch, not the State.

Second, the State has no real interest in this lawsuit. In order to be a real party to a controversy, a state's interest "must be one in the state as an artificial person." *Mo., Kan. & Tex. Ry. Co. v. Hickman* (*Missouri Railway*), 183 U.S. 53, 60 (1901). Although a state "has a governmental interest in the welfare of all of its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws," these general governmental

---

[8] *Id*; *see also* Rec. Doc. 1-1, at 6 (Petition ¶ 10) ("Petitioner has a right and a cause of action under La. R.S. 30:16 for the cleanup of the contamination on the Grace Ranch property…").

interests do not make a state a real party in interest because "if that were so the state would be a party in interest in all litigation." *Id.*

For example, in *Missouri Railway*, citizens of Missouri who used a particular bridge sued a railway company, a citizen of Kansas, to restrain the railway company from violating an order of the railroad commissioners regarding charges for travel over the bridge.  Similar to this case, the suit was "to obtain a decree of the court commanding the railway company to comply with the order of the commissioners."  *Id.* at 61.  While recognizing that the State of Missouri had a governmental interest in securing compliance with its laws, the Supreme Court held that the State was not a real party in interest so as to preclude removal; the real parties were the railway company and the citizens of Missouri.  *Id.* at 59-60.  In reaching its conclusion, the Court reasoned that the suit was not an action to recover any money for the State and that the results would not inure to the benefit of the State as a state in any degree.  *Id.* at 59.

Here, just as in *Missouri Railway*, the State has no interest in the litigation except the governmental interest in securing compliance with its laws.  Unlike the cases cited by Grace Ranch,[9] this is not an action to recover money for the State and the State has no pecuniary or ownership interest in this lawsuit.  Rather, like *Missouri Railway*, this is a suit to compel cleanup of private property in compliance with the Commissioner's orders, laws, and regulations.  In fact, Grace Ranch specifically demands in this lawsuit that it—not the State—be awarded all costs related to

---

[9] *See, e.g., New Mexico ex rel. Nat'l Educ. Ass'n of N.M., Inc. v. Austin Capital Mgmt. Ltd.*, 671 F. Supp. 2d 1248, 1251 (D.N.M. 2009) (monies recovered would belong to state); *Bosse v. Pitts*, 455 F. Supp. 2d 868, 873 (W.D. Wis. 2006) (state agency had financial stake in recovering benefits it paid to plaintiff); *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 754 (D.N.J. 2005) (attorney general sought recovery of civil penalties on behalf of state); *West Virginia ex rel. McGraw v. Minn. Mining & Mfg. Co.*, 354 F. Supp. 2d 660, 665 (S.D.W. Va. 2005) (attorney general sought recovery of money paid by state); *Colorado ex rel. Land Acquisition Comm'n v. Am. Mach. & Foundry Co.*, 143 F.Supp. 703, 710 (D. Co. 1956) (title to condemned property would be in state's name).

8

the "establishment of environmental damage . . .".[10]  The relief sought and pled by Grace Ranch will inure not to the benefit of the State as an artificial person, but to Grace Ranch, the landowner seeking to have its property remediated.  Thus, the real party in interest is Grace Ranch, who has a financial stake in the outcome in this suit, not the State.

Third, the State is not involved in, nor does it control the prosecution of this action.  Courts often consider the state a nominal party if it is not involved in the litigation and does not control the proceedings.  *See Maryland v. Baldwin*, 112 U.S. 490, 492 (1884) (concluding that the State of Maryland was a nominal party because the State did not control the proceedings); *D.C. ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1047 (D.C. Cir. 1986) (concluding that the District of Columbia was a nominal party because the District was "not involved in [the] prosecution" of the lawsuit).  As discussed above, this action was instituted by Grace Ranch through its private counsel, without any authority to act on behalf of the State.  Because the State is not involved in the prosecution of this case, "the common-sense conclusion is that the [State] is a nominal party and that the suit is between private parties whose citizenship will determine diversity." *Transamerica Ins. Co.*, 797 F.2d at 1047.  Grace Ranch even goes as far to dedicate a portion of its memorandum to support its position that "under the Louisiana Supreme Court's rulings in *Marin* and *Eagle Pipe*, Grace Ranch clearly has a right to pursue the regulatory claims of the commissioner that are alleged here."[11]  This statement indicates that it is Grace Ranch, the private party purportedly affected by the alleged violation, that is the true party in interest—not the State.

---

[10] *See* Rec. Doc. 1-1, at 7; *see also* Rec. Doc. 1-1, at 4 (Petition ¶ 5) (Grace Ranch, LLC is a 'person in interest adversely affected…").
[11] *See* Rec. Doc. 11-1, at 11.

9

In short, the State's interest establishes that it is, at most, a nominal party in this case. Although the State has a general governmental interest in securing compliance with its laws, the State has no pecuniary interest in this lawsuit, is not involved in its prosecution, and indeed is not the "person in interest adversely affected" with the right to file suit under R.S. 30:16. For these reasons, the State is not a real party in interest to this case and should be disregarded in the Court's diversity jurisdiction analysis.

### C.    The fact that the Commissioner may be substituted as plaintiff if injunctive relief is granted is irrelevant to the Court's jurisdictional analysis.

Grace Ranch contends that the State is the real party in interest because R.S. 30:16 provides that the Commissioner of Conservation must be made a party and substituted as plaintiff *if* injunctive relief should be granted.  Grace Ranch's argument is incorrect for two reasons.  First, Grace Ranch's argument runs contrary to decades of Supreme Court and Fifth Circuit precedent, which requires courts to disregard the citizenship of nominal or formal parties even when they may be required by law to join the action.  Second, because diversity jurisdiction is judged at the time of removal, the mere possibility that the Commissioner could be made a party *if* the Court ultimately decides to grant injunctive relief has no bearing on the Court's jurisdictional analysis.

First, it is well established that the citizenship of nominal or formal parties who have no real interest in the dispute before the court must be disregarded, "even though they may be required by law or court order to join in the lawsuit."  *Wolff*, 768 F.2d at 645.  In other words, the fact that a law may require that the State be made a party to a lawsuit does not, in and of itself, make the State a real party in interest to the suit.

For example, in *Thames v. Mississippi ex rel. Shoemaker*, the State of Mississippi sued the superintendent of the state penitentiary for the benefit of the administrator of a decedent's estate, alleging that the superintendent had violated an official bond by allowing a convict to go at large.

10

117 F.2d 949, 950 (5th Cir. 1941). The State alleged that the superintendent was therefore liable for the death of the decedent, who had been murdered by the convict. *Id.* Although the applicable statute provided that the bonds of all public officers "shall be made payable to the state, and shall be put in suit in the name of the state," the Fifth Circuit held that the State was a nominal party that must be disregarded for jurisdictional purposes. *Id.* ("Though the State of Mississippi is the necessary plaintiff, since she has no interest at stake, she is a nominal party not to be considered on the question of diversity of citizenship."). Thus, contrary to Grace Ranch's argument, the fact that the Commissioner will be joined as a party to the suit if injunctive relief is granted does not mean that the State is a real party in interest.

Second, the mere possibility that the Commissioner could eventually be substituted as plaintiff should have no bearing on the Court's jurisdictional analysis. The jurisdictional facts that support removal "must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). It is undisputed that the Commissioner was not a party at the time of removal. Indeed, the entire premise of Grace Ranch's suit is that the Commissioner *failed* to take any action after Grace Ranch notified him of an alleged violation. The fact that R.S. 30:16 requires that the Commissioner be joined as a plaintiff *if* Grace Ranch proves an entitlement to injunctive relief down the line does not change the result. Indeed, it is black letter law that "[d]iversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (holding that substitution of non-diverse plaintiff, which was not an indispensable party at the time the complaint was filed, did not defeat diversity jurisdiction). Here, in determining whether jurisdiction exists as of the time of removal, the Court should not consider the citizenship of the Commissioner, who

may never become a party and whose substitution as plaintiff should not defeat diversity jurisdiction. *See id.*

> **D.      Abstention is not warranted when this Court can decide these state law issues without disrupting the State's regulatory policy.**

In a last-ditch attempt to remand this case back to state court, Grace Ranch suggests that this Court abstain from exercising jurisdiction pursuant to the *Burford* doctrine.  Like its other arguments however, Grace Ranch's position is not supported by the law and must be disregarded.

Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colo. River Conservation Dist. v. United States*, 424 U.S. 800 (1976), courts <u>may</u> abstain from hearing cases in certain exceptional circumstances.  In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court reviewed a challenge to an oil-drilling permit issued by the Texas Railroad Commission.  The Court provided a thorough overview of the regulatory scheme that Texas used to oversee oil fields.  The Court observed that the state's interest in deciding which companies obtained drilling permits was of great public importance because oil and gas are "two of our most important natural resources." *Id.* at 320. The Court further observed that Texas had established a comprehensive system of administrative and judicial review regarding the issuance (or the denial) of drilling permits and that uniformity in decision-making was essential to effectively conserve oil and gas in Texas. *Id.* at 324–27.  The Court further found that a federal court's exercise of equitable power had the potential to inject considerable confusion and disruption into the permitting process established by the state. *Id.* at 327.  ("As a practical matter, the federal courts can make small contribution to the well-organized system of regulation and review which the Texas statutes provide.").  Accordingly, the Supreme Court held that "a sound

12

respect for the independence of state action requires the federal equity court to stay its hand." *Id*. at 334.

Since then, the Supreme Court has held that the *Burford* abstention doctrine may only be applied when a federal court determines that its jurisdiction would disrupt and interfere with 1) "complex regulatory schemes" in cases involving "difficult state-law questions" or 2) disrupt "efforts to establish a coherent state policy regarding a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989). The Fifth Circuit has instructed district courts to also consider the following factors when deciding the applicability of the *Burford* doctrine: (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law; (3) the importance of the state issue involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009); *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993).

This balancing test "only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (emphasis added). It is an abuse of discretion for a court to abstain outside of the *Burford* doctrine's framework. *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004); *see also Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 701 (5th Cir. 1999).

Here, unlike the plaintiff in *Burford* who requested that a federal court overturn a ruling made by a state agency, Grace Ranch has not asked this Court to make a decision that would overturn an existing state administrative determination by the Louisiana Department of Natural Resources or other state regulatory agency. *See e.g. Burford*, 319 U.S. at 316-17. This distinction

13

is important because the Supreme Court in *Burford* was asked to decide whether the Texas Railroad Commission properly issued a drilling permit under Texas law.  Had the Court retained jurisdiction and ruled on this issue, it would have disrupted Texas's entire regulatory scheme designed to conserve oil and gas and would have forced Texas' state legislature to amend an already "well-organized system" of procedures and review to coincide with the Court's ruling. That is not the case here.  Indeed, the entire premise of Grace Ranch's claim is that it can seek judicial redress for an alleged regulatory violation when the Commissioner fails to act.

Grace Ranch argues that the Court should nevertheless abstain and remand this case back to state court because the jurisprudence surrounding La. R.S. 30:16 is "unsettled." (Rec. Doc. 11-1, at 12).  Respectfully, the fact that a state law statute is "unsettled" is not grounds for a federal court to abstain.  In *Meredith v. Winter Haven*,  the Supreme Court held that federal courts should not abstain in diversity cases when state law is unclear. 320 U.S. 228 (1943) ("denial of that opportunity by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act.").

Grace Ranch also has failed to show that this case would present difficult or complex questions of state law.  *Quackenbush,* 517 U.S. at 706; *New Orleans Pub. Serv., Inc.*, 491 U.S. at 350; *McNeese,* 373 U.S. at 668.  The allegations made in the Petition are in significant part those of negligence.  Grace Ranch specifically alleges that its property was contaminated as a result of Defendants' improper construction and use of unlined earthen pits and that these practices were contrary to industry standards and violated Statewide Order 29-B.[12]  As a result of this alleged

---

[12] *See* Rec. Doc. 1-1, at 6 (Petition ¶ 9) ("Defendants failed to design and construct their unlined earthen pits on the Grace Ranch property using the best practical techniques to prevent leaching and to prevent movement of leachate away from their waste facilities.  Defendants also discharged or disposed of oil field wastes from their unlined

14

contamination, Grace Ranch has demanded that Defendants remediate its property to "a level that complies with applicable regulations and orders . . . ."  The state law surrounding Grace Ranch's claims is not difficult or complex as these issues are routinely decided and adjudicated by federal courts in Louisiana and within this district.  *See generally Emerald Land Corp.*, 2019 WL 2353189 (W.D. La. 2019) ("Emerald contends it is entitled to restoration and remediation of its property . . . from all Defendants"); *Moore*, 2016 WL 843384, *1 (W.D. La. 2016) ("Essentially, the Moores allege that Denbury contaminated their property through oil and gas operations.").

Furthermore, there is no special or exclusive state forum for judicial review for the type of claim asserted by Grace Ranch.  Rather, this Court would have to employ the same process and apply the same law as a state court in the same position, as numerous Louisiana federal courts have done before.  This stands in significant contrast to *Burford* in which there was a state forum exclusively dedicated to deciding the merits of drilling permit applications, and in which a federal ruling would have disrupted Texas' highly centralized state administrative mechanisms.

The *Burford* abstention doctrine is narrow and sparingly invoked and not appropriate for this case.  *Quackenbush*, 517 U.S. at 726-28.  Federal jurisdiction over this matter will not require confrontation with questions of complex state law, and it will comply with, not disrupt, the State's regulatory apparatus.  *Brownell Land Co., LLC v. Apache Corp.*, No. Civ. A 05-322, 2005 WL 3543772 (E.D. La. Oct. 13, 2005).  Accordingly, the Court should decline to apply the *Burford* doctrine in this matter.

Finally, Grace Ranch's reliance on Judge Drell's recent memorandum ruling in *Guilbeau v. BEPCO, L.P.*, No. 18-551, 2019 WL 3801647 (W.D. La. Aug. 12, 2019) is misplaced.  Notably,

---

earthen pits and/or from their other oil and gas operations facilities onto or into the Grace Ranch property in violation of Statewide Order-29-B.").

the *Guilbeau* court first denied the plaintiff's motion to remand, finding that diversity jurisdiction existed and specifically rejecting the same argument Grace Ranch asserts here that the State is the real party interest in a claim brought under R.S. 30:16.  *See Louisiana ex rel. Guilbeau v. BEPCO, L.P.*, No. 18-551, 2018 WL 4869389, *1 (W.D. La. June 18, 2018) (recommending denial of the motion to remand "[b]ecause the State was improperly made a party and has no real interest in the action . . ."), reasons and report and recommendation adopted by Judge Drell, 2019 WL 1372000 (W.D. La. March 26, 2019).  Judge Drell's abstention ruling was issued in connection with a subsequent motion to dismiss filed by the defendants, which the court determined would have required an *Erie* guess on an important state policy issue.  2019 WL 3801647 at *6.  Because that same state policy issue is not yet before this Court in this case—indeed, this case is merely at the threshold jurisdictional inquiry and the parties have not even raised initial defenses—it would be premature for this Court to abstain at this time.

## III. CONCLUSION

For the foregoing reasons, Grace Ranch's Motion for Remand should be denied.  There is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Further, the Court should decline to apply the *Burford* abstention doctrine as the state law claims presented herein do not undermine Louisiana's regulatory schemes, but instead will ensure compliance in a neutral federal forum between citizens of different states.

Respectfully submitted:


s/Penny L. Malbrew
George Arceneaux III (Bar No. 17442)
Kelly B. Becker (Bar No. 27375)
Penny L. Malbrew (Bar No. 31247)
Kathryn Z. Gonski (Bar No. 33442)
Court C. VanTassell (Bar No. 34132)
Brittan J. Bush (Bar No. 34472)
John S. Troutman (Bar No. 36059)
**LISKOW & LEWIS**
822 Harding Street
P. O. Box 52008
Lafayette, LA  70505
Telephone:  (337) 232-7424
Facsimile:  (337) 267-2399

**Attorneys for BP America Production Company**

s/April L. Rolen-Ogden
R. Keith Jarrett, T.A. (Bar #16984)
Kelly T. Scalise (Bar #27110)
**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile: (504) 556-4108

and

April L. Rolen-Ogden (Bar #30698)
Michael H. Ishee (Bar #36507)
**LISKOW & LEWIS**
822 Harding Street
P. O. Box 52008
Lafayette, LA  70505
Telephone:  (337) 232-7424
Facsimile:  (337) 267-2399

**Attorneys for BHP Petroleum (Americas), Inc.**

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of October 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel registered for electronic service. I further certify that I have served a copy of the foregoing pleading on all parties to this proceeding not registered for electronic service, by e-mailing, faxing, and/or mailing the same by United States mail, properly addressed and first-class postage prepaid.

s/Penny L. Malbrew